UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA                    CRIMINAL NO. 06-50081-01

versus                                      JUDGE WALTER

REGINALD B. ATKINS                          MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

The issue before the court is whether Defendant, Reginald Atkins is incompetent to stand trial because he suffers from amnesia concerning events surrounding his arrest.  A Competency Hearing was held before the undersigned on April 19, 2007.   For the reasons that follow,  the undersigned recommends to the District Judge that Defendant be found competent to stand trial.

### Applicable Law and Procedure

A criminal defendant may not be tried unless he is competent.  Pate v. Robinson, 383 U.S. 375, 378 (1966);  Washington v. Johnson, 90 F.3d 945, 949-950 (5th Cir. 1996).   An erroneous determination of competence threatens a fundamental component of our criminal justice system -- the basic fairness of the trial itself.  Cooper v. Oklahoma, 517 U.S. 348, 364 (1996).  In Dusky v. United States, 362 U.S. 402, 402 (1960), the Supreme Court established the following test for competency: "Whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as factual understanding of the proceedings against him."  See also

Carter v. Johnson, 131 F.3d 452, 459 (5th Cir. 1997); Moody v. Johnson, 139 F.3d 477, 480-481 (5th Cir. 1998).

A hearing on the issue of competency must be held if there is reasonable cause to believe the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. 18 U.S.C. § 4241; United States v. Dockins, 986 F.2d 888, 893 (5th Cir. 1993).   The defendant is entitled to court appointed counsel, the opportunity to testify and present evidence, to subpoena witnesses on his own behalf, and to confront and cross-examine the witnesses who appear at the hearing.  § 4247(d).

The Government bears the burden of proving a defendant's competency by a preponderance of the evidence. Dockins, 986 F.2d at 892.  If the court finds that the defendant is presently suffering from a mental disease or defect rendering him incompetent, the court is required to commit him to the custody of the Attorney General for treatment in a suitable facility.  § 4241(d).

Even if the defendant is initially found competent to stand trial, it may become apparent during the course of the trial that the defendant is, in fact, incompetent.  United States v. Swanson, 572 F.2d 523, 526, fn. 3 (5th Cir. 1978).  Because competency is an essential consideration in the fairness of the trial, the district court may at any time during

or after the trial reevaluate the competency of the accused, with or without a motion by counsel.  Id.[1]

**Amnesia**

A defendant suffering from amnesia is not per se incompetent to stand trial.  Swanson, 572 F.2d at 526 (5th Cir. 1978).  Instead, the propriety of trying an amnesiac defendant is a question to be determined according to the circumstances of each individual case.  United States v. Doke, 171 F.3d 240, 248 (5th Cir. 1999). Amnesia is a complex condition that may be caused by a variety of factors.  Because non-pathological amnesia may be difficult to ascertain, the district court is in the best position to make a determination between allowing amnesia to become an unjustified haven for a defendant and, on the other hand, requiring an incompetent person to stand trial.  Swanson, 572 F.2d at 526.

According to the Fifth Circuit, the inquiry may proceed on both subjective and objective levels.  At the subjective level, the district court may apply the relevant standard and look to the defendant's present ability to consult with counsel and to understand the proceedings against him.  In evaluating the propriety of requiring the trial to proceed, the court may additionally consider other factors relevant to the defendant's particular situation. Those factors might include the defendant's present ability to take the stand on matters other

---

[1] In Wilson v. U.S., 391 F.2d 460 (D.C. Cir. 1968), the Court of Appeal required the trial judge at the close of the trial to make findings of fact that the defendant had demonstrated his competency during the trial.  In Swanson, the Fifth Circuit declined to adopt such a standard procedural approach.  572 F.2d 523, fn. 3.

than the amnesiac event and whether the defendant suffers from some other pathological or psychological condition apart from the amnesia that hinders his present ability to participate in his defense.  Id.

One important factor is whether a continuance is likely to do any good.  Granting a continuance to a defendant whose amnesia has been diagnosed as temporary may materially increase his ability to stand trial.  If the amnesiac condition is unlikely to abate, the trial judge may question whether the defendant will ever be in any better position to stand trial.  A presently incompetent defendant may never be able to stand trial and may have to be released.  On the other hand, a presently competent defendant whose amnesia seems permanent would not benefit from a continuance. Moreover, because the continuance would delay the trial, the recall of other witnesses would decrease, making it more difficult to give the amnesiac defendant a fair trial.  Finally, the trial judge can evaluate the nature of the amnesia and the strength of the evidence that the condition is real and not feigned.  Id. at 526-527.

The necessity for a continuance should also be considered from an objective standpoint of whether the defendant can receive a fair trial despite his amnesia.  Among the relevant questions are these: Can the crime and the defendant's whereabouts be reconstructed without his testimony?  The strength of the case against the defendant may make his own testimony less critical than in a weaker case.  Would access to Government files help the defendant prepare a defense?  If information held by the prosecution could fill in gaps in the

defendant's memory, the possibility of prejudice may be lessened. Id. at 527; Doke, 171 F.3d at 248.

**Analysis**

Defendant was evaluated by two extremely well-qualified experts: Dr. George Seiden, M.D., a forensic psychiatrist retained by Defendant, and Dr. Robert Johnson, Ph.D., a forensic neuropsychologist at the Federal Correctional Institution in Fort Worth, Texas. Their reports are in the record (under seal) as Defendant's Exhibit 1 and Government's Exhibit 1, respectively.  Their conclusions are remarkably similar:  Defendant has a rational and factual understanding of the proceedings and the charges against him, but his ability to assist in his defense is impaired due to his amnesia regarding the events surrounding his arrest.

The indictment charges Defendant with being a felon in possession of various firearms on or about March 2, 2005.  At this stage, very little information has been provided to the court about the underlying charge.  From the experts' interviews with Defendant (as reflected in their reports), it appears that Defendant lived in his mother's old house.  The exact location is not clear to the undersigned, but it appears the guns were in a gun safe in an adjacent or nearby garage or storage building.  Defendant contends he did not have the key or combination to the gun safe.  Following an argument involving Defendant, his son and his mother, deputies were called to the house by Defendant's mother.  Defendant was eventually arrested and made a statement to the deputies.

Defendant has no memory of the events surrounding his arrest due to a substance-abuse-induced blackout. Defendant has an extensive history of illicit drug abuse, and he overdosed in April 2005 leading to a Myocardial Infarct. As a result, Defendant was hospitalized in a drug-induced coma from April 27 to May 6, 2005.

Except for the memory deficit for the event surrounding his arrest, there is no question that Defendant would be found competent to stand trial. He has a good understanding of the charges against him and the roles of the various participants in court proceedings. His memory is otherwise good; he was able to recount immediate and recent events, and he was able to give the experts detailed information about his childhood, education, military service, marital history and employment history. His intelligence testing fell within the high average range, as evidence from his full scale I.Q. score of 118 (88th percentile). Defendant's performance I.Q. score was 124 (95th percentile). His verbal I.Q. score was 109 (73rd percentile). On measures of visual memory and learning, Defendant's scores fell within the superior psychometric range. However, on scores of verbal learning, Defendant's scores were depressed at the 16th percentile, suggesting an attentional problem. During the testing and interviews, Defendant was cooperative and compliant, and there is no evidence that Defendant is faking his amnesia.

Dr. Seiden opines that Defendant is competent, but he qualifies that opinion by saying it is for the court to determine whether Defendant can receive a fair trial given his memory deficit. Dr. Johnson likewise believes Defendant is competent, but in light of his amnesia,

he suggests that the court may need to order the Government to cooperate more fully in pretrial discovery in order to fill any gaps in Defendant's memory.  See e.g., Wilson v. United States, 391 F.2d 460 (D.C. Cir. 1968).  When asked on cross-examination how, in light of his amnesia, Defendant will be able to assist his counsel in cross-examining the deputies concerning the events surrounding his arrest, Dr. Johnson answered: "It's a challenge."

Given the nature of the charges against Defendant, the undersigned believes that he can receive a fair trial despite his amnesia.  This is not a complicated fraud case which would require Defendant to explain or justify detailed transactions that occurred years earlier.  Compare Doke, supra and Swanson, supra.  Instead, the issues in this case are whether Defendant possessed the guns and whether he was a convicted felon.  The Government already has provided "open file" discovery to Defendant's counsel.  The gap in Defendant's memory of the events surrounding his arrest can be filled, at least to some extent, by Defendant's mother, who can testify regarding Defendant's access to the house and the safe where the guns were located.  She is also the person who called the police, which led to Defendant's arrest.

The real "challenge," as Dr. Johnson described it, is how defense counsel can deal at trial with the statement allegedly made by Defendant at the time of his arrest.  Apparently, Defendant has no recollection of that statement.  However, the fact that he does not remember the statement does not, standing alone, render the statement inadmissible.  The

District Judge will be able to deal with any issues regarding the statement in the context of the actual trial.

**Conclusion**

Defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding; he has a rational as well as factual understanding of the proceedings against him; he understands the nature and consequences of the proceeding; and he can assist in his defense.  Given the nature of the charges against Defendant and the level of his intellectual abilities as described by the experts, Defendant's amnesia of the events surrounding his arrest do not render him incompetent to stand trial.

Accordingly;

**IT IS RECOMMENDED** that Defendant be found competent to stand trial.  Due to Defendant's memory deficit, his attorney should attempt to fill the gap in Defendant's memory with other witnesses and sources of information.  The Government should cooperate fully with Defendant's counsel to ensure his preparation for trial.  Both counsel should be prepared to discuss at the final pretrial conference with the District Judge whether any particular or unusual procedures should be employed at trial.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Cr. P. 59(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an

extension of time is granted under Fed. R. Cr. P. 59(b)(2).  A party may respond to another

party's objections within ten (10) days after being served with a copy thereof.  Counsel are

directed to furnish a courtesy copy of any objections or responses to the District Judge at the

time of filing.

A party's failure to file written objections to the proposed findings, conclusions and

recommendation set forth above, within 10 days after being served with a copy, shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court.  See Douglass

v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, on April 30, 2007.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE